FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 06, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUAN R.,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | No. 1:22-CV-03073-SAB<br><br>**ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS** |

Pending before the Court is Plaintiff's appeal of Defendant's denial of his application for social security benefits. Plaintiff is represented by David Lybbert. Defendant is represented by Joseph Langkamer and Brian Donovan.

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying his application for supplemental security income under the Social Security Act, 42 U.S.C. §§ 1382.

### I.  Jurisdiction

On March 17, 2017, Plaintiff filed an application for supplemental security income, alleging disability beginning April 1, 2016. Plaintiff's application was denied initially and on reconsideration. A prior decision by an ALJ denying Plaintiff benefits was issued on July 31, 2019. Plaintiff appealed that decision and the Appeal Council remanded instructing the ALJ to obtain additional evidence

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~ 1

concerning the claimant's impairments; further evaluate the claimant's mental impairments; give further consideration to the claimant's residual functional capacity; giver further consideration to whether the claimant has past relevant work; and obtain supplement evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

On April 7, 2021, Plaintiff appeared with counsel, David Lybbert, and testified at a telephone hearing before ALJ Timothy Mangrum. Frank Lucas, vocational expert, also participated. The ALJ issued a decision on April 20, 2021, finding that Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on March 30, 2022. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on May 27, 2022. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~ 2

determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering to the fourth step, the ALJ must first determine the claimant's residual functional capacity. An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and

fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~ 4

1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

## IV.  Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized herein.

At the time he filed his application, Plaintiff was 32 years old. He did not graduate from high school because he dropped out in the ninth grade. He reported that he had learning difficulties and participated in special education classes. When Plaintiff was young, his father physically abused him.

He testified that he continues to see shadows, he is depressed, and it is difficult to go anywhere or be in front of people. His depression and anxiety began when he was 13. He also experiences panic attacks. He testified that he cannot even go grocery shopping. He has difficulty getting out of bed and showering. He was living with his girlfriend and her two children, but he does not interact with them much. He has severe anxiety. He has told medical providers that he sees a green midget that comes through his room before he falls asleep. He has complained of seeing shadows and having hyper-auditory senses, in which he hears voices in the background.

Plaintiff had a heroin and methamphetamine addiction. He completed treatment and has been receiving methadone treatment. Defendant does not have a

**ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS** ~ 5

driver's license.

## V. The ALJ's Findings

The ALJ issued an opinion affirming denial of benefits. AR 15-24. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 17, 2017, the application date. AR 17.

At step two, the ALJ identified the following severe impairments: anxiety disorder, depressive disorder, and history of substance abuse. AR 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. AR 17. Ultimately, the ALJ concluded that Plaintiff has a residual function capacity ("RFC") to perform: a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple work related instructions, tasks, and decisions with only occasional changes in the workplace; he is limited to no interaction with the public and only incidental interaction with the coworkers (i.e. work can be around coworkers throughout the day but no tandem tasks and not in close proximity). AR 19.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 26.

At step five, the ALJ found that Plaintiff was not disabled and capable of performing work that exists in significant numbers in the national economy, such as such as cleaner II, hand packager, and cleaner, laboratory equipment. AR 24.

## VI. Issues for Review

1. Whether the ALJ properly assessed the medical opinions.

2. Whether the ALJ properly evaluated Plaintiff's credibility and evaluation of his symptoms.

3. Whether the ALJ properly caried out the instructions of the Appeal Council.

//
//

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~6

## VII. Discussion

### (1) The ALJ's evaluation of the medical evidence

The medical opinion of a claimant's treating physician is given "controlling weight" as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. § 404.1527(c)(2)-(6); *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The ALJ gave little weight to the opinions of Dr. N.K. Marks, Dr. Eisenhauer, and Dr. Gentle, and gave partial weight to Richard Borton, PhD and Jan Lewis, PhD.

### Dr. Marks

Dr. Marks evaluated Plaintiff in 2017. Dr. Marks rated the overall severity on Plaintiff's ability to perform basic work activities as severe. He found that Plaintiff has Severe Effect on the ability to perform basic work activity in the following areas: perform activities within a schedule, maintain regular attendance

and be punctual within customary tolerances without special supervision; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. He noted that Plaintiff's speech was poorly organized, and he was inarticulate. He appeared anxious and his affect was constricted. He demonstrated confused thinking. Plaintiff reported that he hears voices and hears amplified background noises. His working memory was fair, his long-term memory was poor, and he struggled to maintain focus. Dr. Marks opined that Plaintiff's abstract thought was not within normal limits.

      The ALJ rejected Dr. Marks' opinion because Dr. Marks did not review any records and he relied primarily on Plaintiff's self-reports, which the ALJ considered to be unreliable. The ALJ found that Dr. Marks' assessment was inconsistent with treatment notes because Plaintiff displayed improvement in symptoms and over all functioning. The ALJ then gave little weight to Dr. Eisenhauer because Dr. Eisenhauer referenced Dr. Marks' evaluation in support of her assessment.

      Notably, the ALJ gave little weight both providers who evaluated Plaintiff (see below). One of the reasons for doing so was because neither one reviewed the record. What the ALJ failed to appreciate, however, was that both evaluators seemingly reached the same conclusions, all without reviewing the record. Given that both evaluators relied on their observations and diagnostic tools in evaluating Plaintiff and making their conclusions and their results were consistent indicates the ALJ should have given more weight to their opinions rather than less. The ALJ incorrectly assumed that these evaluators were only relying on Plaintiff's self-reports in coming to their conclusions. Rather, the record demonstrates that both evaluators observed and tested Plaintiff and came to similar conclusions.

**ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS** ~ 8

Additionally, a more in-depth review of the records indicates that most of the time, Plaintiff presented as depressed and anxious, and his condition was not improving. The record indicates that Plaintiff experienced depression and anxiety since he was 13 and that he has cognitive difficulties, and communication issues, which prevented him from graduating from high school and from working a full-time job. The record reflects that Plaintiff attempted to work but lasted only about a month before his anxiety prevented him from continuing to work.

Most of the records in which Plaintiff reported that he was doing well was in relation to methadone treatments that he was receiving. There are little records indicating that Plaintiff's depression and anxiety were improving. Thus, rather than be inconsistent with the longitudinal record, Dr. Marks' evaluation is consistent with most of the records indicating that Plaintiff suffers from chronic depression and anxiety that prevents him from being able to work full-time.

As such, substantial evidence does not support the ALJ's evaluation of Dr. Marks' testimony.

### Dr. Genthe

Dr. Genthe examined Plaintiff on August 13, 2019. He found that Plaintiff has Severe Effect on the ability to perform basic work activity in the following areas: understand, remember and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms and set realistic goals and plan independently.

Based on behavior observations, information gained during the interview, and PAI profile scores, it appeared to Dr. Genthe that Plaintiff met the DSM-5 criteria for Schizophrenia and clinical depression. He believed Plaintiff has significant intellectual limitations that have not been formally assessed. Dr. Genthe reports that Plaintiff had moderate difficulties following conversation and his

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~ 9

concentration was not within normal limits and concluded Plaintiff's level of social maturity was poor.

The ALJ gave little weight to the opinion of Dr. Genthe because he reviewed no records, and the ALJ believed his opinion was inconsistent with the treatment notes around the time of his assessment.

For the same reasons as set forth above, the ALJ erred in giving little weight to Dr. Genthe's opinion. Rather, the record demonstrates that Dr. Genthe's opinion is consistent with the record and Plaintiff suffers from chronic depression and anxiety that prevents him from working full-time. As such, substantial evidence does not support the ALJ's evaluation of Dr. Marks' testimony.

**(2) The ALJ's evaluation of Plaintiff's Testimony**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. The ALJ concluded that Plaintiff's mental health complaints are out of proportion to the objective medical evidence of record. The ALJ then provided bullet-points to cite to certain portions of the record.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (citation and quotation omitted). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and quotation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id*. (citation and

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~10

quotation omitted). That said, if the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ failed to provide clear and convincing reasons for rejected Plaintiff's symptom testimony. Providing bullet points without further analysis as to why these records suggest that Plaintiff is not credible is not sufficient to reject Plaintiff's testimony.

Moreover, the ALJ's citations to certain portions of the record appear to be an attempt to "cherry-pick" from mixed results to support a denial of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014).

For example, the ALJ noted that Marty Walters, M.A., was concerned that Plaintiff was malingering and just wanting a psychosis diagnostic and medication to bolster his SSI appeal. Walters make this notation on March 19, 2018. Yet less than a week later, Walters made the following observations in recommending that Plaintiff continue to receive services:

> [Plaintiff's] level of functioning has changed only a little since first starting therapy. It is taking longer for him to show significant progress because he has some cognitive deficits that affect his comprehension and memory. He still suffers from crippling anxiety and panic symptoms most times when he has to go somewhere where there will be a lot of people.

The ALJ focused on the more negative notation regarding malingering and ignored the other notation made just four days later than suggested that Plaintiff was not malingering—a classic case of "cherry-picking" the record. Also, it should be noted that there are over 600 pages of medical records and that is the only notation that suggested that the therapist thought Plaintiff was malingering, and even that statement is questionable, given the therapists statement less than a week later that reflected that Plaintiff was still suffering from crippling anxiety and panic

**ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS** ~11

symptoms. The ALJ's suggestion that Plaintiff was malingering is not supported by substantial evidence.

Another example is that on one occasion, Plaintiff showed up in a good mood for his therapy session. Walters made a notation that he saw Plaintiff actually laughed. Apparently, this was the first time Walters had seen Plaintiff smile or heard him laugh in all the months they have been working together, suggesting chronic depression and anxiety rather than improvements, given this occurred just one time.

Consequently, the ALJ erred in failing to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony and this error was not harmless because Plaintiff's testimony regarding his symptoms go to the heart of his disability claim. As such, the Court credits Plaintiff's testimony. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

**VII. Remand for Immediate Award of Benefits**

Here, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Marks and Dr. Genthe and for discounting Plaintiff's testimony. The record is clear that if Dr. Marks' and Dr. Genthe's opinion and Plaintiff's testimony was credited as true, or were given proper weight, Plaintiff would be found disabled. The evidence conclusively demonstrates that Plaintiff is unable to sustain gainful employment for any amount of time in the national economy. As such, a remand for the calculation and award of benefits is both appropriate and required.

//
//
//
//
//
//

**ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS** ~12

Accordingly, **IT IS HEREBY ORDERED:**

1. The decision of the Commissioner is **reversed** and **remanded** for an immediate award of benefits.
2. For court management purposes, Plaintiff's Opening Brief, ECF No. 12, is **GRANTED**, and the Commissioner's Brief, ECF No. 13, is **DENIED**.
3. Judgment shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 6th day of April 2023.



Stanley A. Bastian
Chief United States District Judge

ORDER REVERSING COMMISSIONER'S DECISION DENYING BENEFITS ~13